1

**HOGAN LOVELLS US LLP**
J. Tom Boer (State Bar No. 199563)
tom.boer@hoganlovells.com
Olivia Molodanof (State Bar No. 328554)
olivia.molodanof@hoganlovells.com
4 Embarcadero Center, Suite 3500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499

2

3

4

5

6

7

*Attorneys for Defendant*
PACIFIC GAS AND ELECTRIC COMPANY

8

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

**SAN FRANCISCO DIVISION**

12

FRIENDS OF THE EEL RIVER; PACIFIC
COAST FEDERATION OF FISHERMEN'S
ASSOCIATIONS; INSTITUTE FOR
FISHERIES RESOURCES; CALIFORNIA
TROUT; AND TROUT UNLIMITED,

13

14

15

Plaintiffs,

16

v.

17

PACIFIC GAS AND ELECTRIC
COMPANY,

18

19

Defendant.

20

CASE NO.: 3:23-CV-02379-JD

**DEFENDANT PACIFIC GAS AND
ELECTRIC COMPANY'S:**

**(1)   NOTICE OF MOTION AND MOTION
TO DISMISS PLAINTIFFS'
COMPLAINT; AND**
**(2)   MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
THEREOF**

*[Request for Judicial Notice and [Proposed]
Orders Filed Concurrently Herewith]*

Date:          November 9, 2023
Time:          10:00 a.m.
Courtroom:     11, 19th Floor
Judge:         Hon. James Donato

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on November 9, 2023, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable James Donato, in Courtroom 11 of the United States District Court of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Pacific Gas and Electric Company ("Defendant" or "PG&E") will and hereby does move this Court for an order dismissing Plaintiffs' complaint (the "Complaint") in its entirety.

This Motion to Dismiss is made pursuant to Rule 12 of the Federal Rules of Civil Procedure in response to the filing of the Complaint:

The Complaint must be dismissed pursuant to FRCP 12(b)(1) because this Court lacks subject matter jurisdiction over the action.  The Federal Power Act, 16 U.S.C. § 825*l*(b), vests exclusive jurisdiction in the Court of Appeals for challenges to Federal Energy Regulatory Commission orders, including the annual license issued to PG&E for operation of the Potter Valley Project and authorizing take of endangered species incidental to such operations.  Consistent with the Federal Power Act's direction, a challenge to the FERC license for the Potter Valley Project, including claims identical to those alleged in the Complaint, is currently pending before the Ninth Circuit.

Alternatively, dismissal of Plaintiffs' action is warranted pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief may be granted.

This Motion is made based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, the pleadings and papers on file, and upon such oral argument as may be made at the hearing.

DATED:  September 8, 2023                **HOGAN LOVELLS US LLP**

                                         By:   /s/ *J. Tom Boer*
                                               J. Tom Boer
                                               Olivia Molodanof

                                         *Attorneys for Pacific Gas and Electric Company*

Hogan Lovells US LLP
Attorneys At Law
San Francisco

1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND .......................................................................................................... 1

    A.   Project Background.......................................................................................... 1

    B.   ESA Consultation History Between FERC and NMFS .................................. 2

    C.   Prior ESA Litigation Challenging Operation of the Project .......................... 4

    D.   Surrender Proceedings and Annual License Renewal .................................... 4

III. LEGAL STANDARD................................................................................................... 5

IV.  ARGUMENT ............................................................................................................... 6

    A.   Dismissal of the Complaint Pursuant to FRCP 12(b)(1) Is Warranted Because This Court Lacks Subject Matter Jurisdiction ............................................... 6

    B.   Alternatively, the Complaint Should Be Dismissed Pursuant to FRCP 12(b)(6) Because Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted.......... 8

        1.   The License and Its Terms Remain Valid and Unchanged............................ 9

        2.   The ITS Applies to Cape Horn Dam and Its Fish Passage Facilities............. 11

        3.   Plaintiffs Cannot Obtain Consultation Through This Litigation ............... 13

            i.   No Discretionary Action Has Occurred…………………………… 13

            ii.  Effects of Water Temperature Were Considered In the Biological Opinion……………………………………………...…. 14

            iii. Any Required Consultation Is Solely Between FERC and NMFS…………………………………………………………. 15

V.   CONCLUSION............................................................................................................ 15

i

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bird Conservancy v. F.C.C.*,
545 F.3d 1190 (9th Cir. 2008) ..................................................................................8

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*,
273 F.3d 1229 (9th Cir. 2001) .................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................5

*Bennet v. Spear*,
520 U.S. 154 (1997).................................................................................................3

*Cal. River Watch, et al. v. Pac. Gas & Elec. Co.*,
No. C 17-05874 WHA, 2018 WL 1000353 (N.D. Cal. Feb. 21, 2018)....................4, 13

*Cal. Save Our Streams Council, Inc. v. Yeutter*,
887 F.2d 908 (9th Cir. 1989) ...........................................................................6, 7, 8

*Cal. Sportfishing Protection Alliance v. FERC*,
472 F.3d 593 (9th Cir. 2006) ...............................................................................14

*Cal. Trout, Inc. v. FERC*,
313 F.3d 1131 (9th Cir. 2002) .............................................................................10

*City of Tacoma v. Taxpayers of Tacoma*,
357 U.S. 320 (1958).................................................................................................7

*Ctr. for Biological Diversity. v. EPA*,
847 F.3d 1075 (9th Cir. 2017) ...............................................................................15

*El Dorado Irrigation Dist.*,
99 FERC ¶ 61,362 (June 27, 2002)........................................................................10

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ................................................................................5

*Env't Protection Info. Ctr. v. Simpson Timber Co.*,
255 F.3d 1073 (9th Cir. 2001) ...............................................................................14

*Idaho Rivers United v. Foss*,
373 F.Supp.2d 1158 (D. Idaho 2005) .......................................................................7

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012) .................................................................................14

*KEI (Me.) Power Mgmt. (III) LLC*,
    173 FERC ¶ 61,069 (Oct. 15, 2020) .........................................................................11

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. FPC*,
    510 F.2d 198 (D.C. Cir. 1975) ..................................................................................10

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ....................................................................................5

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*,
    606 F.Supp.2d 1195 (E.D. Cal. 2008).........................................................................7

*Pac. Gas & Elec. Co.*,
    106 FERC ¶ 61,065 (Jan. 28, 2004)................................................................. *passim*

*Pac. Gas & Elec. Co.*,
    180 FERC ¶ 61,047 (Jul. 28, 2022) ...........................................................2, 5, 6, 10

*Pac. Gas & Elec. Co.*,
    25 FERC ¶ 61,010 (Oct. 4, 1983) ..........................................................................2, 12

*Parks Sch. of Bus. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) ......................................................................................6

*Pub. Watchdogs v. So. Cal. Edison Co.*,
    984 F.3d 744 (9th Cir. 2020) ......................................................................................8

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ....................................................................................5

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ......................................................................................6

*U.S. v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ......................................................................................1

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ....................................................................................6

**Statutes**

16 U.S.C. § 808(a)(1)............................................................................................................9, 10

16 U.S.C. § 825*l*(b) ....................................................................................................... *passim*

16 U.S.C. § 1536(a)(2)..............................................................................................................3

16 U.S.C. § 1536(b)(3)(A)........................................................................................................3

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16 U.S.C. § 1536(b)(4) ...........................................................................................3, 4

16 U.S.C. § 1536(b)(4)(B) ...........................................................................................8

16 U.S.C. § 1536(o)(2) ...........................................................................................8, 12

16 U.S.C. § 1538 ...........................................................................................4

16 U.S.C. § 1540(g)(1)(A) ...........................................................................................6

42 U.S.C. § 4332(2)(E) ...........................................................................................2

Endangered Species Act ................................................................................... *passim*

National Environmental Policy Act ...........................................................................2

**Regulations**

18 C.F.R. § 16.18(c) ...........................................................................................5, 10

50 C.F.R. § 402.14(h)(2) (2019) ...........................................................................................3

50 C.F.R. § 402.14(i)(1) (2019) ...........................................................................................3

50 C.F.R. § 402.14(i)(4) (2019) ...........................................................................................15

50 C.F.R. § 402.14(i)(5) (2019) ...........................................................................................13

50 C.F.R. § 402.16(a) (2019) ...........................................................................................13

63 Fed. Reg. 19,247-01 (Apr. 17, 1998) ...........................................................................................2, 3

64 Fed. Reg. 9,508 (Feb. 26, 1999) ...........................................................................................3

68 Fed. Reg. 763 (Jan. 7, 2003). ...........................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................5, 6

Fed. R. Civ. P. 12(b)(6) ...........................................................................................5, 8

**Other Authorities**

H.R. REP. 97-567, H.R. Rep. No. 567, 97th Cong., 2nd Sess. 1982 ...........................................................................................9

Endangered Species Consultation Handbook, *Procedures for Conducting Activities Under Section 7 of the Endangered Species Act* (U.S. Fish & Wildlife Service and NMFS, March 1998) ...........................................................................................11

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

The Potter Valley Hydroelectric Project ("Project") has operated for over a hundred years pursuant to a license issued by the Federal Energy Regulatory Commission ("FERC").   The Court should dismiss the Complaint outright due to lack of subject matter jurisdiction because, pursuant to the Federal Power Act, 16 U.S.C. § 825*l*(b), the Court of Appeals has exclusive jurisdiction over Plaintiffs' challenge to terms of the federal license that authorize Pacific Gas and Electric Company ("PG&E") to operate the Project.   Since 2004, FERC's license has also included an Incidental Take Statement ("ITS") issued pursuant to the Endangered Species Act ("ESA").   The ITS authorizes the incidental "take" of endangered species resulting from operation of the Project and provides a shield from ESA citizen suits like the instant case.   Yet, Plaintiffs erroneously claim that operation of the Project nonetheless violates the ESA.   Alternatively, therefore, the Court should dismiss the Complaint because Plaintiffs fail to state a claim upon which the Court can grant relief.

**II.   BACKGROUND**

Although not strictly required to resolve this Motion to Dismiss, to contextualize Plaintiffs' claims, we provide a description of the Project, the history of FERC's licensing, the 2004 formal consultation between the National Marine Fisheries Service ("NMFS") and FERC authorizing incidental take of salmonids (*i.e*., the salmon and steelhead at issue here), prior ESA citizen suit litigation challenging the Project that was promptly dismissed, PG&E's decision to surrender the Project, and FERC's annual license renewal in connection with the surrender.   These background facts are not reasonably in contention because they are directly pled by Plaintiffs in their Complaint or incorporated by reference therein, and/or are readily subject to judicial notice.[1]

**A.   Project Background**

The Project has historically generated approximately 9.2 megawatts of hydropower and facilitated the transfer of water from the Eel River to the East Branch Russian River.  Compl. ¶¶ 4, 5,

---

[1] The Court may consider the entirety of documents cited explicitly in the Complaint, *e.g*., FERC orders, and assume their contents to be true for purposes of this Motion, because they are incorporated by reference in the Complaint.  *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). PG&E is also concurrently requesting judicial notice of these documents.

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

61.  The uppermost portion of the Project on the Eel River includes Scott Dam and the Lake

Pillsbury storage reservoir.  *Id.* ¶ 69.  Below Scott Dam, the Eel River flows twelve miles into Van

Arsdale Reservoir, created by Cape Horn Dam.  *Id.* ¶¶ 3, 69.  Cape Horn Dam has fish passage

facilities that enable salmonids to use the reach between Cape Horn and Scott Dam.  *Id.* ¶ 63.  At

Van Arsdale, water is either released from Cape Horn Dam to the Eel River or is conveyed to the

Potter Valley powerhouse.  *Pac. Gas & Elec. Co.*, 106 FERC ¶ 61,065, 61,207 (Jan. 28, 2004).  The

release of water from the powerhouse generates electricity and provides most of the water in the East

Branch Russian River.  *Id.*

Cape Horn Dam and its fish ladder were constructed in 1907.  Compl. ¶¶ 62, 63.  Scott Dam

was constructed in 1921.  *Id.* ¶ 69.  FERC issued a fifty-year license for the Project in 1922.  Compl.

¶ 70; *Pac. Gas & Elec. Co.*, 25 FERC ¶ 61,010, 61,060 (Oct. 4, 1983).  The license was transferred

to PG&E in 1930.  Compl. ¶ 71.  Following an extended relicensing period beginning in 1972,

FERC issued PG&E a new license for the Project in 1983.  *Id.*; *Pac. Gas & Elec. Co.*, 180 FERC ¶

61,047 at *1, n.5 (Jul. 28, 2022).  The 1983 license covered operation of the same aspects of the

Project as the original 1922 license, including Cape Horn Dam and its fish passage facilities.  25

FERC at 61,061.  It also included minimum flow requirements to protect salmonids, a 10-year study

of flow and temperature monitoring of the Eel River, and modification of the Cape Horn fish ladder

"to ensure more successful passage of salmon and steelhead to suitable spawning grounds."  *Id.* at

61,057; 106 FERC at 61,208.

**B.      ESA Consultation History Between FERC and NMFS**

Based on the 10-year study, and recommendations from the California Department of Fish

and Game, PG&E proposed to amend the license's flow schedule.  63 Fed. Reg. 19,247-01 (Apr. 17,

1998).  To protect aquatic resources, PG&E also proposed adding other provisions to the license

specific to releasing water from Scott Dam in the late winter/spring to promote the migration of

salmonids and modifying Cape Horn Dam to better regulate flows.  *Id.* at 19,248.  FERC determined

that PG&E's proposal could constitute a major Federal action.  As a result, the National

Environmental Policy Act required FERC to examine a reasonable range of alternatives, 42 U.S.C. §

4332(2)(E), which FERC did by preparing an Environmental Impact Statement ("EIS").  Notice of

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

2

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

PG&E's amendment application, and FERC's intent to prepare an EIS, was published in 1998. 63 Fed. Reg. 19,247-01 (April 17, 1998). Publication resulted in comments and motions to intervene by, among others, Plaintiffs California Trout, Trout Unlimited, and Friends of the Eel River. *Id*. In 1999, FERC issued a Draft EIS recommending PG&E's proposed amendment. 64 Fed. Reg. 9,508 (Feb. 26, 1999). Plaintiffs Friends of the Eel River and Pacific Coast Federation of Fishermen's Associations filed comments on the Draft EIS. 106 FERC at 61,209.

FERC also took action consistent with Section 7(a)(2) of the ESA—which requires federal agencies to pursue consultation with NMFS so that any action will not "jeopardize the continued existence" of a federally-listed species—when it processed PG&E's license amendment application. 16 U.S.C. § 1536(a)(2). In March 1999, FERC submitted the Draft EIS to NMFS and requested formal consultation. 106 FERC at 61,210. NMFS issued a final Biological Opinion ("BO"), documenting the effects of FERC's action, in November 2002. Compl. ¶ 13. FERC subsequently provided public notice of the BO and requested comments. 68 Fed. Reg. 763 (Jan. 7, 2003). Comments were submitted by Plaintiff Friends of the Eel River, among others. 106 FERC at 61,210.

If a biological opinion finds that an action will likely "jeopardize" a protected species, the lead federal agency must propose reasonable and prudent alternatives ("RPA") to reduce that risk. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(2) (2019). If NMFS anticipates that harm or death—*i.e.*, "take"—of a protected species will occur incidental to the agency action even when implementing the RPA, NMFS must provide an ITS authorizing the anticipated take and requiring compliance with specified reasonable and prudent measures ("RPMs") to minimize that take. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i)(1) (2019). The U.S. Supreme Court describes an ITS as:

> [A] written statement specifying, among other things, those "measures that the [Service] considers necessary or appropriate to minimize [the action's impact on the affected species]" and the "terms and conditions . . . that must be complied with by the Federal agency . . . to implement [such] measures." 16 U.S.C. § 1536(b)(4). Any taking that is in compliance with these terms and conditions "shall not be considered to be a prohibited taking of the species concerned." § 1536(o)(2). Thus, the Biological Opinion's Incidental Take Statement constitutes a permit authorizing the action agency to "take" the endangered or threatened species so long as it respects the Service's "terms and conditions."

*Bennet v. Spear*, 520 U.S. 154, 170 (1997).

1     Because NMFS concluded that the proposals in the license amendment application were

2 likely to jeopardize threatened salmonids, it prepared a RPA.  BO at 81, 83.  The RPA consisted of

3 multiple components, including a flow regime for portions of the Eel River below Cape Horn Dam

4 and Scott Dam, an adaptive management plan for salmonid predators, and modifications to Cape

5 Horn Dam.  *Id.* at 85-94.  To address any incidental take caused by continued operation of the

6 Project, NMFS included an ITS in the BO.  16 U.S.C. § 1536(b)(4); *see* BO at 104-10.  The ITS

7 authorizes take incidental to "all activities related to the PG&E Potter Valley Project."  BO at 105-

8 07.  In 2004, FERC issued an amended license (the "License") incorporating the RPA and ITS as

9 terms.  106 FERC at 61,221-23, Apps. A, B.  None of the Plaintiffs challenged FERC's issuance of

10 the License.

### C. Prior ESA Litigation Challenging Operation of the Project

12     Plaintiffs' Complaint is not the first meritless allegation that PG&E's operation of the

13 Project, in compliance with its FERC License, nonetheless violates the ESA.  In 2017, California

14 River Watch and Coast Action Group filed a lawsuit in the Northern District alleging that "PG&E is

15 violating ESA § 9, 16 U.S.C. § 1538, in its operation of the Potter Valley Project."  *Cal. River*

16 *Watch, et al. v. Pac. Gas & Elec. Co.*, No. 3:17-cv-05874, Compl. ¶ 2 (N.D. Cal. Nov. 21, 2017).

17 Judge Alsup recognized that "NMFS also issued an Incidental Take Statement to FERC at the

18 conclusion of its Section 7 consultation [and that a] 'taking' subject to and compliant with the terms

19 and conditions of an ITS is not a prohibited 'taking' under the ESA."  *Cal. River Watch, et al. v.*

20 *Pac. Gas & Elec. Co.*, No. C 17-05874 WHA, 2018 WL 1000353, at *1 (N.D. Cal. Feb. 21, 2018).[2]

21 Dismissal was warranted, Judge Alsup concluded, because plaintiffs failed to allege that, in

22 operating the Project, "PG&E caused a 'taking' of protected species in excess of its authorization

23 under the 2002 ITS and in violation of the ESA."  *Id.*

### D. Surrender Proceedings and Annual License Renewal

25     In January 2019, PG&E notified FERC that it did not intend to relicense the Project.  Compl.

26 ¶ 73.  As a result, PG&E is pursuing an administrative process before FERC to surrender its License.

---

[2] PG&E is concurrently requesting judicial notice of the Amended Complaint (ECF No. 18) and Order Granting Motion to Dismiss (ECF No. 40) in Case No. 3:17-cv-05874-WHA.

*Id.* ¶¶ 80, 83.  On April 21, 2022, FERC ministerially reissued an annual license to operate the Project during the surrender process under the terms and conditions of the License, including those terms incorporated into the License through the BO and ITS.  *Id.* ¶ 76.  Until the project is surrendered, this annual license will renew automatically.  *Id.*; *see* 18 C.F.R. § 16.18(c) ("An annual license issued under this section will be considered renewed automatically without further order of the Commission").  On July 29, 2022, FERC approved a schedule for PG&E to prepare and file a surrender application by January 2025.  Compl. ¶ 80.  Most recently, the Project's License was automatically renewed in April 2023.  *Id.* ¶ 76; *see* 18 C.F.R. § 16.18(c).

In May 2022, Plaintiffs requested a rehearing before FERC alleging that the annual license issued to PG&E was not in compliance with the ESA and arguing, *inter alia*, that FERC should reinitiate consultation with NMFS.  Compl. ¶ 78.  On July 28, 2022 FERC issued an order rejecting Plaintiffs' request and affirming its issuance of the annual license as a non-discretionary duty.  *Id.* ¶ 79; *see* 180 FERC at *3.  Plaintiffs then filed petitions for review of that order in the Ninth Circuit.  Compl. ¶ 79.  Those petitions, just like Plaintiffs' lawsuit, challenge PG&E's continued operation of the Project pursuant to the annual license.  *See* ECF No. 27 (Plaintiffs' Not. of Pendency of Other Actions or Proceedings).

## III.   LEGAL STANDARD

A facial challenge pursuant to FRCP 12(b)(1) "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When reviewing a FRCP 12(b)(1) motion to dismiss, all allegations are assumed to be true and all reasonable inferences are drawn in the plaintiff's favor.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  Where a plaintiff cannot cure a jurisdictional defect by amendment, a court may dismiss a complaint without leave to amend.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

FRCP 12(b)(6) requires dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Meaning, it must include "factual content that allows the court to draw the reasonable inference that the

1   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

2   court shall take "all allegations of material fact as true and construe[] them in the light[] most

3   favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

4   1995). A plaintiff may not rely on conclusions or speculation to state a claim. *Somers v. Apple, Inc*.,

5   729 F.3d 953, 959-60 (9th Cir. 2013). "Only a complaint that states a plausible claim for relief with

6   well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss."

7   *Whitaker v. Tesla Motors, Inc*., 985 F.3d 1173, 1176 (9th Cir. 2021).

8   **IV.    ARGUMENT**

9       **A.    Dismissal of the Complaint Pursuant to FRCP 12(b)(1) Is Warranted Because
        This Court Lacks Subject Matter Jurisdiction**

10

11          Dismissal is warranted because jurisdiction to review Plaintiffs' allegation—that operation of

12   the Project by PG&E, pursuant to the terms of its License, violates the ESA—is vested solely in the

13   Court of Appeals. And, in fact, Plaintiffs are currently pursuing a challenge in the Ninth Circuit to

14   FERC's July 28, 2022 Order which affirmed PG&E's annual license to operate the Project and

15   rejected Plaintiffs' request to reinitiate ESA consultation. *See* 180 FERC at *2-3; Compl. ¶ 79; ECF

16   No. 27 (citing and attaching *Friends of the Eel River, et al. v. FERC*, No. 22-70182 (9th Cir. 2022)).[3]

17          Plaintiffs filed this Complaint pursuant to the ESA's citizen-suit provision which grants the

18   district courts generalized jurisdiction over suits "to enjoin any person . . . who is alleged to be in

19   violation of any provision [of the ESA]." 16 U.S.C. § 1540(g)(1)(A). However, the Federal Power

20   Act provides for "<u>exclusive</u>" jurisdiction in the Court of Appeals for any challenge to a FERC order:

21          Any party to a proceeding under this chapter aggrieved by an order issued by the
        Commission in such proceeding may obtain a review of such order in the United
22          States Court of Appeals. . . . Upon the filing of such petition such court shall have
        jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm,
23          modify, or set aside such order in whole or in part.

24   16 U.S.C. § 825*l*(b). The Ninth Circuit has held that "when two jurisdictional statutes draw different

25   routes of appeal, the well-established rule is to apply only the more specific legislation." *Cal. Save*

26   *Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989). Interpreting section

27

28   [3] Plaintiffs' Ninth Circuit Petitions for Review are incorporated by reference in the Complaint ¶ 79.
     PG&E is also concurrently requesting judicial notice.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

825*l*(b), the U.S. Supreme Court held that Congress prescribed a specific, complete, and exclusive mode for judicial review of FERC orders. *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 335-36 (1958); *see also Cal. Save Our Streams Council, Inc.*, 887 F.2d at 911 ("[T]he Act provides *exclusive* jurisdiction for the Courts of Appeals to review and make substantive modifications to FERC licensing orders.") (emphasis in original). "Hence, upon judicial review of the Commission's order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms must be made in the Court of Appeals or not at all." *City of Tacoma*, 357 U.S. at 336. This exclusive jurisdictional rule extends to cases involving alleged ESA "take" claims—where an ITS is included in a FERC license—by "preclud[ing] the district court from exercising jurisdiction over ESA-related matters covered by a FERC license." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 606 F.Supp.2d 1195, 1215 (E.D. Cal. 2008) ("Feather River operations covered by the FERC license are not within the jurisdiction of the district court."). And the Ninth Circuit has not hesitated to confirm a district court's dismissal of a complaint where jurisdiction is "exclusively" for the Court of Appeals. *See, e.g.*, *Cal. Save Our Streams Council, Inc.*, 887 F.2d at 912-13 (dismissing action for lack of jurisdiction in district court because "the [Federal Power Act] funnels all challenges to the courts of appeals"); *cf. Idaho Rivers United v. Foss*, 373 F.Supp.2d 1158, 1161 (D. Idaho 2005) (District court lacked subject matter jurisdiction for suit challenging biological opinion because it would "restrain the licensing procedures authorized by FERC.") (internal citations omitted).

Plaintiffs admit their Ninth Circuit petitions and their Complaint "concern the same general subject matter—the impact of the Project's operations and maintenance on threatened [salmonids] in the Eel River watershed—and both cases allege violations of the Endangered Species Act." ECF No. 27 at 3. In a fruitless effort to skirt the jurisdictional limitations barring their duplicative filing, they argue that "the two actions differ" because their Ninth Circuit petitions challenge "FERC's issuance of an annual license to PG&E to continue operation and maintenance of the Project, while this action challenges PG&E's operation of the Project." *Id.* Plaintiffs' own description of the two parallel actions, however, reveals that they are effectively the same and seek essentially identical relief. Such an explanation is insufficient to justify a basis for filing in District Court too.

1   Significantly, all of PG&E's actions related to the Project—which are under attack in the Complaint

2   and allegedly the root of an ESA violation—are conducted pursuant to the terms of the License, and

3   FERC has extended authorization to PG&E to continue operating the Project via the annual license.

4   Compl. ¶ 76 ("The annual license allows PG&E to operate the Project pursuant to the same terms

5   and conditions as the expired license.").  Nor do Plaintiffs allege that PG&E is operating the Project

6   outside the scope of its License.

7           Plaintiffs "cannot elude" the Federal Power Act's "exclusive review provision by disguising

8   its true objection" to FERC's annual license as a case against PG&E for operating the Project

9   (consistent with the License).  *See Am. Bird Conservancy v. F.C.C.*, 545 F.3d 1190, 1193 (9th Cir.

10  2008).  Such antics cannot create jurisdiction where it is otherwise lacking.  *Pub. Watchdogs v. So.*

11  *Cal. Edison Co.*, 984 F.3d 744, 765-66 (9th Cir. 2020) (despite "artful pleading," claims were clearly

12  a challenge to agency's licensing actions).  This Court lacks jurisdiction because—despite Plaintiffs'

13  "careful pleading"—the "practical effect of the action . . . is an assault on an important ingredient of

14  the FERC license," here, the ITS.  *Cal. Save Our Streams Council, Inc.*, 887 F.2d at 911-12.

15          **B.      Alternatively, the Complaint Should Be Dismissed Pursuant to FRCP 12(b)(6)
                      Because Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted**

16

17          If, despite the strict limitations imposed by the Federal Power Act, this Court were to

18  nonetheless find jurisdiction for Plaintiffs' ESA claims, dismissal is still warranted pursuant to

19  FRCP 12(b)(6) because Plaintiffs fail to state a claim upon which relief can be granted.  Simply put,

20  PG&E's operation of the Project is subject to a valid ITS; the ITS authorizes take incidental to

21  operation of the Project; and the ITS authorization provides a shield from any ESA section 9 citizen

22  suit.  Plaintiffs fail to plead a claim that survives this fundamental limitation on ESA citizen suits.

23          An ITS authorizes "the taking of an endangered species or a threatened species incidental to

24  the agency action."  16 U.S.C. §§ 1536(o)(2), 1536(b)(4)(B).  The relevant "agency action" here is

25  FERC's License authorizing operation of the Project.  The License includes an ITS.  And,

26  "[s]ignificantly, the [ITS] functions as a safe harbor provision immunizing persons from Section 9

27  [ESA] liability and penalties for takings committed during activities that are otherwise lawful and in

28  compliance with its terms and conditions."  *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

8

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

F.3d 1229, 1239 (9th Cir. 2001) (citing 16 U.S.C. § 1536(o)).  Congress anticipated the potential for incidental harm to threatened species resulting from agency action, which is why it set up the ITS mechanism.  *See* H.R. REP. 97-567, H.R. Rep. No. 567, 97th Cong., 2nd Sess. 1982, 1982 WL 25083, at **2826 (An ITS is intended to address "the situation in which a . . . proposed [federal] action will result in the taking of some species incidental to that action . . . The Committee intends that such incidental takings be allowed provided that the terms and conditions . . . to minimize the impact of the taking are complied with.").  Accordingly, any incidental take arising within the scope of the ITS cannot form the basis for a citizen suit.  Because Plaintiffs fail to allege any taking that is <u>not</u> incidental to PG&E's operation of the Project, there is no redressable ESA claim.

Plaintiffs' creative effort to plead around the fundamental protection afforded by the ITS—by claiming that the License is no longer valid, that the ITS is fundamentally deficient, or that the Project is causing take in ways not anticipated in the BO—all fail.  Compl. ¶¶ 105-07, 115.  This is because the License remains valid; the scope of the ITS extends to Cape Horn Dam and its fish passage facilities; annual renewal of the license under the Federal Power Act is a non-discretionary ministerial act that does not trigger reconsultation; and any claim that there is "unanticipated take" due to operation of the Project is factually inaccurate and improperly alleged against PG&E.

### 1.    The License and Its Terms Remain Valid and Unchanged

When FERC amended the License in 2004, it incorporated the BO and the ITS.  106 FERC at 61,221-23, Apps. A, B.  Plaintiffs agree.  Compl. ¶¶ 71, 92.  FERC's non-discretionary issuance of an annual license during the surrender process extends the ITS.  Plaintiffs effectively concede this point.  Compl. ¶ 76 ("The annual license allows … [operation] pursuant to the same terms and conditions as the expired license.").  The ITS therefore remains an authorization for incidental take caused by PG&E activity related to the Project.  And, because PG&E is not causing a take outside the scope of the Project, the ITS provides a complete shield to Plaintiffs' ESA section 9 citizen suit.

At the expiration of a license term, the Federal Power Act mandates that FERC must issue an annual license under the terms and conditions of the prior license until a project is disposed of via surrender or otherwise.  *See* 16 U.S.C. § 808(a)(1) ("the commission <u>shall issue</u> from year to year an annual license to the then licensee <u>under the terms and conditions of the existing license</u>") (emphasis

1   added).  Annual licenses are renewed automatically.  18 C.F.R. § 16.18(c).  Consistent with this

2   mandate, in April 2022, FERC issued an annual license for PG&E to continue to operate the Project.

3       FERC's issuance of an annual license is a ministerial, non-discretionary act springing from

4   the expiration of the existing license.  *Cal. Trout, Inc. v. FERC*, 313 F.3d 1131, 1136 (9th Cir. 2002)

5   ("[T]he issuance of annual licenses is a 'non-discretionary act, in that the Commission has no choice

6   but to issue the licenses to the existing licensees.'") (internal citations omitted).  "[A]n annual

7   license is a statutory mechanism that continues the original license in effect, thus tolling its

8   expiration date."  *El Dorado Irrigation Dist.*, 99 FERC ¶ 61,362, 62,530 (June 27, 2002).  FERC's

9   authority to issue annual licenses derives not from its consideration of an application for a new

10  license, but rather from the expiration of the existing license.  *Id.*  FERC, responding to Plaintiffs'

11  requested rehearing challenging the annual license, affirmed the scope of its legal obligation to

12  renew PG&E's License:

13      Section 15(a)(1) of the FPA provides that, if an existing license expires and no
        decision has yet been made about federal takeover or relicensing, the Commission

14      *shall* issue an annual license for the project "under the terms and conditions of the
        existing license."  16 U.S.C. § 808(a)(1) (emphasis added). . . . The language is

15      mandatory, and legal precedent has consistently found that issuing an annual license
        is a ministerial and non-discretionary act that the Commission must perform. . . .

16

17  180 FERC at *3.  This renewal process is designed to maintain the status quo, which includes

18  continuance of the ITS.  Because FERC's mandatory renewal of a license under the Federal Power

19  Act is not part of a relicensing proceeding, FERC cannot amend the License when performing its

20  ministerial duty.  *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. FPC*, 510 F.2d

21  198, 205 (D.C. Cir. 1975).  No different from the other License terms, the take authorization

22  provided by the ITS does not change during the period of FERC's mandatory annual renewal.

23      The ITS is valid for the term of the License.  That "term" includes the period of any

24  ministerial annual licenses issued by FERC.  *See* 16 U.S.C. § 808(a)(1).  Contrary to Plaintiffs'

25  conclusory claims (*e.g.*, Compl. ¶ 105), an ITS cannot terminate *sua sponte*, nor does it contain an

26  expiration date.  *See, e.g.*, BO at 105 (NMFS recognized that "incidental take . . . may occur as a

27  result of implementation of the identified reasonable and prudent alternative for the remaining life of

28  the FERC license").  Critically, the ITS itself recognizes that the "remaining term of the license"

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

10

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

1    includes "annual license(s) which may be issued after license expiration or license surrender." *Id.* at

2    108.  Thus, the ITS, like the License, remains valid today.

3                    **2.       The ITS Applies to Cape Horn Dam and Its Fish Passage Facilities**

4            Plaintiffs recognize that Cape Horn Dam was constructed over 115 years ago.  Compl. ¶ 62.

5    They also concede that "Cape Horn Dam" includes "fish passage facilities: a fish ladder and a

6    structure known as a 'fish hotel,'" (*id.* ¶ 63) and that NMFS was fully away of the fish ladder at

7    Cape Horn Dam at the time the BO was prepared.  *Id.* ¶ 57.  Given there is no dispute whatsoever

8    that these facilities have been in operation for well over a century, Plaintiffs' claim that the ITS does

9    not cover the Cape Horn Dam and its associated fish passages (*id.* ¶¶ 109, 116) defies logic and is

10   inconsistent with Plaintiffs' own admission that the Project "consists of . . . Cape Horn Dam and Van

11   Arsdale Reservoir (including associated fish passage facilities)."  *Id.* ¶ 61.  The Court must reject

12   Plaintiffs' baseless attempts to narrow the scope of the ITS.

13           Foremost, the ITS is unambiguous about its applicability: "This incidental take statement is

14   applicable to all activities related to the PG&E Potter Valley Project (P-77-110) pursuant to the RPA

15   described in this opinion."  BO at 105.  And the BO describes the Project as broadly consisting of

16   "Scott Dam and Lake Pillsbury, Cape Horn Dam and Van Arsdale Reservoir, and a diversion tunnel

17   and powerhouse located on the East Branch Russian River."  BO at 1.  Nonetheless, Plaintiffs try to

18   shrink the scope of the ITS by selectively reading the BO as somehow limiting the ITS solely to the

19   specific description of the "Proposed Action," which does not reference Cape Horn Dam's fish

20   passage facilities.  Compl. ¶ 91.  This tortured reading of the BO must be rejected.  *See KEI (Me.)*

21   *Power Mgmt. (III) LLC*, 173 FERC ¶ 61,069, 61,495 (Oct. 15, 2020) (as long as effects are analyzed,

22   "it makes no practical difference whether they are part of the baseline or part of the proposed

23   action").

24           The "activities" related to the Project and covered by the ITS are delineated in the BO,

25   including in its "Environmental Baseline."  BO at 28; *see* Endangered Species Consultation

26   Handbook, *Procedures for Conducting Activities Under Section 7 of the Endangered Species Act*

27   (U.S. Fish & Wildlife Service and NMFS, March 1998) (environmental baseline includes the "total

28   effects of all past activities, including effects of the past operation of the project" to determine the

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

11

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

total effect on listed species).  NMFS defined the environmental baseline to include all Project

construction and operations since Project inception.  BO at 28 ("NMFS will treat all effects that

occurred during the life of the Project to this point as part of the environmental baseline").

Consistent with this scope, NMFS assessed Cape Horn Dam's fish ladder as part of the baseline

activities, including the fish ladder's original design and its subsequent modification.  *Id.* at 28 n.1;

*see also id.* at 34-35 (describing "Potter Valley Impacts" as including a historically "inadequate fish

ladder at Cape Horn Dam" and summarizing the subsequent installation of a "state-of-the-art fish

screen," in 1995, that "protects juvenile salmonids.").  While Plaintiffs may not agree with NMFS's

conclusions about the fish passage facilities, they were indisputably assessed as part of the BO.  As

such, Cape Horn Dam and its fish passage facilities are incontrovertibly "part of" the Project that

PG&E is authorized to operate pursuant to its License.

Second, the ITS anticipated the type of incidental take that Plaintiffs unconvincingly argue

was "never covered" by the BO.  Compl. ¶ 116.  NMFS expected that incidental take might occur as

a result of implementation of the identified RPA "in the form of delayed or blocked migration,

dewatering of redds, reduced survival due to unfavorable conditions, and predation on juvenile fish."

BO at 104-05.  These references, including to delayed or blocked migration and predation,

encompass the alleged impacts of the Cape Horn Dam fish passage facilities.  *See* 25 FERC at

61,061 ("The existing fish ladder constructed about 1909 at the Cape Horn Dam has not been

efficient in providing for successful upstream migration of adult chinook salmon and steelhead trout

over the dam.").  Yet the Plaintiffs outright ignore the scope of NMFS's assessment in a feeble

attempt to construct exactly the opposite argument, *i.e.*, that "the biological opinion did not authorize

incidental take resulting from these effects (*e.g.*, delayed or blocked migration and increased

predation of ESA-listed salmonids caused by the configuration and full operation of the Cape Horn

Dam fish passage facility.)."  Compl. ¶ 110.  Even in the light most favorable to Plaintiffs,

allegations directly contrary to language in the ITS fail to state a claim for relief.

Any take caused by the Cape Horn Dam fish passage is covered by the ITS as "incidental to

and not intended as part of the agency action" and "not considered to be prohibited taking under the

ESA."  BO at 104; *see* 16 U.S.C. § 1536(o)(2).  "A 'taking' subject to and compliant with the terms

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

12

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – CASE NO.: 3:23-CV-02379-JD

and conditions of an ITS is not a prohibited 'taking' under the ESA.  50 C.F.R. § 402.14(i)(5)."  *Cal. River Watch, et al.*, 2018 WL 1000353, at *1.  Plaintiffs acknowledge this.  Compl. ¶ 43.  And the Northern District has already held that if "PG&E's water diversion operations, even if harmful to salmonids in the Eel River, have not exceeded the 2002 ITS . . . then such water diversion operations cannot be the basis of any liability against PG&E under Section 9."  *Id.* at *3.  Plaintiffs fail to state how any alleged harm caused by Cape Horn Dam's fish ladder (*e.g.*, Compl. ¶¶ 10, 12, 64-67) specifically "exceeds the authorization of the ITS."  *Id.* at *3.  As a result, just as in *Cal. River Watch*, the Court should find that the "complaint contains insufficient allegations to permit any reasonable inference that PG&E caused a 'taking' of protected species in excess of its authorization under the 2002 ITS and in violation of the ESA."  *Id.* at *4.

### 3.  Plaintiffs Cannot Obtain Consultation Through This Litigation

Plaintiffs also fail to state a claim for relief when requesting that this Court invalidate the ITS and order consultation on the basis that the Project is allegedly causing take in ways never anticipated by the BO.  Compl. ¶¶ 44, 107, 116.  A federal agency's obligation to reinitiate consultation can only be triggered where there is "discretionary Federal involvement or control over the action" <u>and</u> certain circumstances exist, including where new information not previously considered about the action's effect on listed species becomes available or the action is modified in a manner not previously considered.  50 C.F.R. § 402.16(a) (2019).  Neither of the relevant triggers have occurred here.  That should be enough to support dismissal.  However, even if a discretionary agency action had occurred (it has not), and new information not previously considered was adequately alleged by Plaintiffs (it is not), Plaintiffs' lawsuit against PG&E is not the appropriate avenue for forcing consultation between non-parties FERC and NMFS, and dismissal is therefore still warranted.

#### i.  <u>No Discretionary Action Has Occurred</u>

Plaintiffs try to argue that automatic annual license renewal under the Federal Power Act might provide a hook for consultation.  However, issuance of the annual license to PG&E is a non-discretionary mandate of federal law (*see supra* Section IV.B.1), and the Ninth Circuit has confirmed that section 7 consultation cannot be triggered absent <u>discretionary</u> agency action.  *See,*

1  *e.g.*, *Env't Protection Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001) (the lack of

2  sufficient discretionary involvement and control means no duty to reconsult pursuant to the ESA).

3  "[T]he ESA imposes no duty to consult about activities conducted by PG&E pursuant to a

4  previously issued, valid license from FERC."  *Cal. Sportfishing Protection Alliance v. FERC*, 472

5  F.3d 593, 595 (9th Cir. 2006); *see also Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1021

6  (9th Cir. 2012) (holding that where activity is proceeding under a license, a federal agency has no

7  duty to consult under the ESA absent affirmative action).  Therefore, there is no legal basis to order

8  formal consultation for the Project.

9        ii.   Effects of Water Temperature Were Considered In the Biological Opinion

10       Plaintiffs try to argue that reconsultation is triggered because "new information" about the

11  effects of water temperature, never evaluated or considered by NMFS, is now available.  Compl. ¶¶

12  108, 116.  This allegation could not be further from reality.  Effects of water temperature throughout

13  the Project were central to NMFS's evaluation of potential threats to salmonids.  Those effects

14  included the consequences of altered water temperature caused by the Project, which are discussed

15  extensively in the BO, beginning at page 1.  The description of "Threats to Salmon and Steelhead

16  Populations" in the BO discusses "increased juvenile mortality resulting from increased water

17  temperatures."  *Id.* at 24.  Much of the Environmental Baseline's thirty pages describes the effects of

18  past and present temperature-related issues in the action area, specifically with respect to Scott Dam,

19  defeating Plaintiffs' specious allegations.  *See, e.g.*, *id.* at 57-58 ("The functioning of designated

20  critical salmonid habitat within the mainstem Russian River has also been compromised by changes

21  in flow and temperature resulting from dams and diversions since 1922 with the completion of Scott

22  Dam . . .  Loss of cold water refugia in the mainstem continues to impact salmonid rearing

23  conditions and survival.").  Despite multiple references to the BO in the Complaint (Comp. ¶¶ 13,

24  14, 71, 84-93), Plaintiffs outright ignore NMFS's extensive consideration of temperature issues in

25  preparing the BO and issuing the ITS.

26       In fact, the License, including the ITS, affirmatively impose requirements on PG&E related

27  to water temperature, including a RMP to monitor temperatures below Scott Dam under different

28  flow regimes.  BO at 107, 109; *see also* 106 FERC at 61,228 ("PG&E to install a continuous reading

Hogan Lovells US LLP
Attorneys At Law
San Francisco

1    thermograph below Scott Dam"). To the extent Plaintiffs believe NMFS failed to adequately

2    address temperature issues in the BO, the time to pursue a challenge has long since passed. *Ctr. for*

3    *Biological Diversity. v. EPA*, 847 F.3d 1075, 1087 (9th Cir. 2017) ("Where, as here, a plaintiff

4    alleges that an agency failed to comply with the ESA's procedural requirements, we apply the

5    general six-year statute of limitations").

6                          iii.    Any Required Consultation Is Solely Between FERC and NMFS

7            Even if there were a colorable claim that FERC should reinitiate consultation with NMFS—

8    which there is not—Plaintiffs still fail to state a claim for which relief can be granted. This is

9    because any assertion that the ITS should be revoked or consultation reinitiated can only be directed

10   to the relevant federal agencies. 50 C.F.R. § 402.14(i)(4) (2019) ("If during the course of the action

11   the amount or extent of incidental taking, as specified [in the ITS], is exceeded, the Federal agency

12   must reinitiate consultation immediately."). Here, FERC—not PG&E—is responsible for

13   determining whether reinitiating consultation is required. Plaintiffs repeatedly admit this fact.

14   Compl. ¶¶ 44, 78, 82, 107.

15           Challenges involving reinitiation of ESA section 7 consultation, including attempts to change

16   the authorization of incidental take for the Project, are not properly brought against PG&E. Absent

17   FERC's participation, there is no relief this Court can provide to address Plaintiffs' claim that

18   reconsultation is required and the ITS is invalid in the meantime. It is not surprising that FERC is

19   not involved because, as addressed in Section IV.A., the only venue where FERC's actions related to

20   the License can be reviewed is the federal Court of Appeals.

21   **V.    CONCLUSION**

22           PG&E respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

23

24   DATED: September 8, 2023                          Respectfully submitted,

25                                                      **HOGAN LOVELLS US LLP**

26                                              By:    /s/ *J. Tom Boer*
                                                       J. Tom Boer
27                                                     Olivia Molodanof

28                                                     *Attorneys for Pacific Gas and Electric Company*

Hogan Lovells US
LLP
Attorneys At Law
San Francisco